Joshua I. White (SBN 278166)
William M. Hogg (SBN 338196)
LAUREL EMPLOYMENT LAW
808 Wilshire Boulevard, Suite 200
Santa Monica, California 90401
Tel: (323) 551-9221
Fax: (310) 564-4093
josh@laurelemploymentlaw.com
william@laurelemploymentlaw.com

*Counsel for Flores & the Hourly Employees*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**GLORIA FLORES**, Individually and for Others Similarly Situated,

Plaintiff,

v.

**WALMART, INC. and WAL-MART ASSOCIATES, INC.**,

Defendant.

**Case No. 2:25-cv-10412-MEMF (MAAx)**

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT FOR:**

(1) FLSA Overtime Violations (29 U.S.C. § 201, *et seq.*);

(2) California Overtime Violations (Cal. Lab. Code § 510);

(3) Meal and Rest Period Violations (Cal. Lab. Code §§ 226.7 and 512);

(4) Wage Statement Violations (Cal. Lab. Code § 226); and

(5) Waiting Time Penalties (Cal. Lab. Code §§ 201–203).

**DEMAND FOR JURY TRIAL**

## SUMMARY

1. Gloria Flores ("Flores") brings this class and collective action to recover unpaid wages and other damages from Walmart, Inc. and/or Wal-Mart Associates, Inc. (collectively, "Walmart").

2. Walmart employed Flores as one of its Hourly Employees (defined below).

3. Flores and the other Hourly Employees regularly work more than 8 hours a day and 40 hours a week.

4. Walmart pays Flores and the other Hourly Employees by the hour, plus various forms of additional remuneration on top of the workers' base hourly rates of pay.

5. But Walmart does not pay them for all overtime wages owed under the Fair Labor Standards Act ("FLSA") when they work over 40 hours in a workweek.

6. Likewise, Walmart does not pay them for all overtime wages owed under the California Labor Code ("Labor Code") when they work over 8 hours in a workday and/or 40 hours in a workweek.

7. Instead, Walmart excludes various forms of compensation from Flores's and the Hourly Employees' regular rates of pay, such as "SCHED CHANGE" pay, "SCHED DECREASE" pay, "INCTV FAC HOURLY" pay, "REST BTWN SHFT" pay, "Addtnl Pay," "Overtime/Inct" pay, "Co Stk Cont" pay, "W+ MBR GROSS" pay, and other similar categories of remuneration (Walmart's "Regular Rate Policy").

8. As a result of Walmart's Regular Rate Policy, it does not pay Flores and the other Hourly Employees all overtime wages owed at the correct rate of pay as required under the FLSA and Labor Code.

9. Further, Walmart frequently does not authorize, permit, and make available compliant meal and/or rest periods to Flores and the other Hourly Employees, which they are entitled to under the Labor Code and relevant IWC Wage Orders.

10. Thus, Walmart fails to authorize, permit, and/or make available required meal and/or rest periods to the Flores and the other Hourly Employees.

11. Further, Walmart fails to provide premium compensation to Flores and the other Hourly Employees for missed and denied meal and/or rest periods.

12. And Walmart's violative policies and practices result in non-compliant wage statements.

13. Among other omissions and shortcomings, the wage statements Walmart provides to Flores and the other Hourly Employees fail to accurately reflect their correct overtime rates of pay, gross wages earned, net wages earned, and/or premium pay owed.

14. Because of Walmart's failure to pay all wages (including straight time wages, overtime wages, double time wages, and premium pay) owed, Flores and the other Hourly Employees do not receive all wages owed during employment.

15. Therefore, Flores and the other Hourly Employees who are Walmart's former employees do not receive all wages owed following their separation from employment.

## JURISDICTION & VENUE

16. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b).

17. This Court has supplemental jurisdiction over the state-law subclass claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18. This Court has specific personal jurisdiction over Walmart based on Walmart's substantial contacts with California, including being registered to do business in California and employing Flores and other Hourly Employees in California.

19. Venue is proper in this Court because a substantial part of the events or omissions giving rise to this claim occurred in Los Angeles County, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

20. Specifically, Walmart employed Flores in and around Los Angeles County and Flores suffered the wage-and-hour violations while working for Walmart in Los Angeles County.

## <u>PARTIES</u>

21. Walmart employed Flores as a team associate in the deli/bakery and stocking departments in Walmart's Super Center located in Porter Ranch, California from approximately August 2024 to September 2025.

22. Walmart classified Flores as non-exempt and paid her by the hour.

23. But Walmart did not pay her for all overtime hours she worked at the correct rate of pay.

24. Instead, under Walmart's Regular Rate Policy, it improperly excluded various forms of remuneration from Flores's regular rate of pay, including but not limited to categories of compensation labeled as "SCHED DECREASE," "SCHED CHANGE," "INCTV FAC HOURLY," "W+ MBR GROSS," and "REST BTWN SHFT."

25. Each of these categories of remuneration paid to Flores is presumed to be included into the regular rate of pay. *See* 29 U.S.C. § 207(e).

26. Each of these categories of remuneration are made as compensation for Flores's hours of employment, in that each of them (with the exception of the W+ MBR GROSS" category) are calculated based on a number of hours worked and paid based on Flores's base hourly rate of pay.

27. For example, during the pay period of November 16, 2024 to November 29, 2024, Flores was paid $125.29 for "SCHED DECRASE" pay, which was calculated based on 12.85 hours worked at a rate of $9.75 per hour (*i.e.*, half of Flores's normal $19.50 per hour rate of pay). During that same pay period, Flores was paid $78.00 for "REST BTWN SHIFT" pay, which was calculated based on 8.00 hours worked at a rate of $9.75 per hour. During that same time period, Walmart paid Flores $6.01 in "W+ MBR GROSS" pay, and took a deduction of $3.76 from her wages as a "W+ MBR NET" deduction. During that same time period, Flores worked 4.89 on-the-clock overtime hours. These additional forms of remuneration were not included into Flores's regular rate of pay, thereby decreasing her true overtime rate of pay in this pay period.

28. As a further example, during the pay period of November 2, 2024 to November 15, 2024, Flores was paid $58.50 for "SCHED CHANGE" pay, which was calculated based on

3.00 hours worked at a rate of $19.50 per hour, which was Flores's normal hourly rate at that time. During that same time period, Walmart paid Flores $6.02 in "W+ MBR GROSS" pay, and took a deduction of $3.76 from her wages as a "W+ MBR NET" deduction. During that same time period, Flores worked 14.10 on-the-clock overtime hours. Flores also earned 1 hour of premium pay for a Labor Code §§ 226.7 and/or 512 break violation, for which she was paid $19.50 in total. The "SCHED CHANGE" pay was not included into Flores's regular rate of pay, thereby decreasing her true overtime rate of pay and her meal/rest break premium pay rate during this pay period.

29. As a further example, during the pay period of January 25, 2025 to February 7, 2025, Flores was paid $90.00 for "REST BTWN SHIFT" pay, which was calculated based on 8.00 hours worked at a rate of $11.25 per hour (*i.e.*, half of Flores's normal hourly rate at that time). During that same time period, Flores was paid an additional $90.00 for "SCHED CHANGE" pay, which was calculated based on 4.00 hours worked at a rate of $22.50 per hour, which was Flores's normal hourly rate at that time. During that same time period, Walmart paid Flores $6.01 in "W+ MBR GROSS" pay, and took a deduction of $3.76 from her wages as a "W+ MBR NET" deduction. During that same time period, Flores worked 10.82 on-the-clock overtime hours. Flores also earned 2 hours of premium pay for a Labor Code §§ 226.7 and/or 512 break violation, for which she was paid $45.00 in total (*i.e.*, 2 hours times $22.50 per hour). The "REST BTWN SHIFT" and "SCHED CHANGE" pay were not included into Flores's regular rate of pay, thereby decreasing her true overtime rate of pay and her meal/rest break premium pay rate during this pay period.

30. By excluding these forms of remuneration from the regular rate and applying a commensurate W+ MBR NET deduction from wages, Walmart under-calculated Flores's overtime rate of pay and, as a result, failed to pay all overtime wages owed.

31. Likewise, Walmart frequently did not authorize and permit Flores to take *bona fide*, compliant meal and rest periods.

32. And Flores did not actually receive *bona fide*, compliant meal and rest periods.

33. Walmart failed to provide Flores with timely or compliant meal and rest periods each workday due in large part to chronic understaffing.

34. For instance, during Flores's time working in the Stocking 1 department of the Porter Ranch Super Center, she worked as the "second in command" to her supervisor Kamran. Part of her primary job duties included using her Walmart-issued work phone to take pictures of inventory items to verify other stocking associates did their jobs correctly and placed inventory in the right place.

35. During this time, Flores and Kamran were the only persons who could perform those job duties on any given shift. When Flores clocked out for her meal periods at Kamran's direction, there were no other employees available to perform the "second in command" job duties.

36. Because Flores would clock out for her 30-minute meal periods using her Walmart-issued phone, Kamran would frequently hand Flores his Walmart-issued phone and instruct her to complete checking the inventory and stocking progress of other associates during her 30-minute meal periods. In other words, Flores was required by Walmart to continue working during her unpaid 30-minute meal periods to complete her work assignments and Flores could not be relieved of her work duties to take a break due to understaffing.

37. Similarly, Flores was required to work through and skip her 10-minute rest periods on a consistent basis for the same reason: understaffing and inability to be relieved by other employees. The inventory/stocking department was chronically understaffed, which made it impractical and logistically impossible for Flores to take a 10-minute rest period each 4 hours of work during her shift.

38. Flores's supervisor, Kamran, would often work beside Flores while she worked through meal and rest periods and witnessed her being denied timely or compliant meal and rest periods.

39. This happened on numerous occasions, including but not limited to shifts within the pay periods of November 2, 2024 to November 15, 2024, November 16, 2024 to November 29, 2024, and January 25, 2025 to February 7, 2025. During these time periods, and others

throughout her employment, Walmart failed to provide Flores with timely and compliant meal and rest periods each qualifying workday. Further, Walmart failed to pay Flores with premium pay penalties, at the correct rate of pay based on all remuneration, for each day in which Flores did not receive a timely or compliant meal period and rest period during these time periods. And when Walmart did provide Flores with such premium payments during these time periods, Walmart under-calculated Flores's regular rate of pay by failing to include all remuneration.

40. And Walmart did not pay Flores the required premium pay for the first missed or non-compliant meal and rest period each workday. Rather, on most days, Walmart failed to pay Flores the required premium pay at all.

41. When Walmart did pay premium pay for non-compliant meal or rest periods, Walmart consistently under-calculated the regular rate of pay by excluding numerous forms of remuneration, thereby failing to pay all premium wages owed.

42. Flores's written consent was filed on October 29, 2025. *See* ECF No. 1-2.

43. The other Hourly Employees are likewise subject to Walmart's Regular Rate Policy and did not receive compliant meal and rest periods or the requisite premium pay.

44. The putative collective of similarly situated employees is defined as:

> **All current and former hourly Walmart employees in California who earned additional remuneration at any time from October 29, 2022 (*i.e.*, 3 years before the filing of this Action) through final resolution of this Action (the "FLSA Collective Members").**

45. The putative class of similarly situated employees is defined as:

> **All current and former hourly Walmart employees in California who earned additional remuneration at any time from October 29, 2022 (*i.e.*, 3 years before the filing of this Action) through final resolution of this Action (the "California Class Members").**

46. The FLSA Collective Members and the California Class Members are collectively referred to as the "Hourly Employees."

47. Walmart, Inc. is a Delaware corporation headquartered in Arkansas, and is registered to do business in California.

48. Walmart, Inc. may be served with process through its registered agent: **C T Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California 91203**. Walmart,

Inc. may also be served through its counsel of record, who have appeared in this action.

49. Wal-Mart Associates, Inc. is a Delaware corporation headquartered in Arkansas, and is registered to do business in California.

50. Wal-Mart Associates, Inc. may be served with process through its registered agent: **C T Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California 91203**. Wal-Mart Associates, Inc. may also be served through its counsel of record, who have appeared in this action.

51. Walmart, Inc. and Wal-Mart Associates, Inc. operate retail stores throughout the State of California doing business as Walmart Discount Stores, Walmart Supercenters, Walmart Neighborhood Markets, and Sam's Club.

52. Walmart, Inc. and Wal-Mart Associates, Inc. jointly employ Hourly Employees throughout California.

53. Flores is informed and believes that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, Walmart, Inc. and Wal-Mart Associates, Inc., each acting as agents and/or employees, and/or under the direction and control of each of the other, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

54. Flores is informed, believes, and thereon alleges that Walmart, Inc. and Wal-Mart Associates, Inc. jointly exercise control over Flores and the other Hourly Employees with respect to their employment.

55. As employers of Flores and the other Hourly Employees throughout the relevant time periods, Walmart, Inc. and Wal-Mart Associates, Inc., and each of them, are solely, jointly, and severally liable for penalties for violating the FLSA and the Labor Code with respect to the employment of Flores and the other Hourly Employees.

56. At all material times, Walmart has done business under the laws of California, has had places of business in California, including within Los Angeles County, and has employed Hourly Employees in this County and elsewhere throughout California.

57. Walmart, Inc. and Wal-Mart Associates, Inc. are "persons" as defined in Labor

Code § 18, and are an "employer" as that term is used in the Labor Code and IWC Wage Orders regulating wages, hours, and working conditions.

58. Walmart, Inc. and Wal-Mart Associates, Inc. are collectively referred to throughout as "Walmart."

## FLSA COVERAGE

59. At all relevant times, Walmart was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

60. At all relevant times, Walmart was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

61. At all relevant times, Walmart was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including the myriad categories of items sold in Walmart's stores. 29 U.S.C. § 203(s)(1).

62. At all relevant times, Walmart has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

63. At all relevant times, the Hourly Employees were Walmart's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

64. At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

65. Walmart is a ubiquitous company throughout the country—it operates thousands of stores in the United States, including over 200 stores in California.

66. Walmart employs over 1,000,000 people in the United States.

67. In California alone, Walmart employs over 100,000 people

68. Walmart operates four types of retail stores throughout the country: (1) Walmart Supercenters; (2) Walmart Discount Stores; (3) Walmart Neighborhood Markets; and (4) Sam's Club.

69. Upon information and belief, Supercenters employ approximately 300 workers per store, Discount Stores employ approximately 200 workers per store, Neighborhood Markets employ up to 95 workers per store.

70. Of these three types of retail stores (not including Sam's Club), most of Walmart's stores are Supercenters.

71. To meet its business objectives, Walmart employs workers such as Flores and the other Hourly Employees to work at its retail stores.

72. For example, Flores worked for Walmart as a team associate in the deli/bakery department and stocking department from approximately August 2024 until September 2025 in the Walmart Supercenter located in Porter Ranch.

73. Flores's primary job duties as a team associate were to stock items (either in the bakery department, stocking cookies and other bakery items, or in the stocking department, stocking items throughout the store), taking inventory, unloading trucks, and assisting her co-workers.

74. Flores was Walmart's hourly employee.

75. Walmart paid Flores approximately $19.50 an hour when she first started. Starting at the beginning of 2025, Walmart gave Flores a raise and paid her $22.50 per hour. In late March or early April 2025, Walmart gave Flores another raise and paid her $23.06 per hour.

76. Throughout the relevant time period, Walmart also paid Flores various amounts in addition to her base hourly rates of pay, including remuneration categorized as "SCHED DECREASE," "SCHED CHANGE," "W+ MBR GROSS," "INCTV FAC HRLY," "REST BTWN SHFT," and other categories of compensation that are calculated based on an hourly basis. Aside from the W+ MBR GROSS pay, these various forms of remuneration resemble a shift differential because they are assigned an hourly rate multiplied by a set number of hours worked. Other Hourly Employees earned similar categories of compensation that were improperly excluded from the regular rate, including remuneration categorized as "Addtnl Pay," "Covid-19 Pay," "Retro Schdchng," "Susp/Reas Susp," "Nonearnedpwerpmt," and other similar pay codes.

77. Upon information and belief, the W+ MBR GROSS pay code represents the cost

and reimbursement of a Walmart+ membership, which is paid to Flores and the other Hourly Employees each pay period. Walmart touts this "free" membership as an employment benefit. *See* https://corporate.walmart.com/about/working-at-walmart (last visited Jan. 6, 2026).

78. Walmart's W+ MBR GROSS payments were also accompanied by a commensurate deduction from Flores's and Hourly Employees' wages each pay period in which such payments were issued. For example, for the pay period spanning December 28, 2024 to January 10, 2025 (*i.e.*, the beginning of the 2025 calendar year), Walmart paid Flores $6.01 in "W+ MBR GROSS" pay. Walmart likewise deducted the amount of $3.76 from Flores's wages for "W+ MBR NET." During that same time period, Flores worked 7.27 on-the-clock overtime hours. But Walmart failed to include the W+ MBR GROSS pay into Flores's regular rate of pay. And Walmart reduced Flores's take-home overtime pay by at least $3.76 during this time period in applying the W+ MBR NET deduction.

79. Many Hourly Employees have pre-existing Walmart+ memberships before they become employed by Walmart, after which they routinely switch "plans" after becoming Walmart employees. Many Hourly Employees keep their Walmart+ memberships after their employment with Walmart ends. For instance, Opt-in Plaintiff Joseph Nieblas had a Sam's Club membership once he started his employment with Walmart in November 2024 and retained his Sam's Club membership for a short period of time after his employment with Walmart ended in June 2025. Numerous Walmart+ members report they were signed up for the membership automatically.[1] Employees' Walmart+ memberships are normal, everyday expenses that are commonly incurred

---

[1] *See, e.g.,* https://www.facebook.com/groups/390355061013042/posts/7059668264081655/ (last visited Jan. 6, 2026) (per Ashley Cruz: "Beware if you buy anything through the Walmart app if [you] don't already have Walmart + there's something on there that's already pre-clicked that signs [you] up for Walmart + and charges [you] $12 a month…. Barely even notice the little pre clicked box (I know I didn't and thought someone hacked our card so hard to get a new one."); https://www.reddit.com/r/walmart/comments/vbheqy/walmart_free_trial_automatically_signed_me_up/ (last visited Jan. 6, 2026) (Per user inconceivableunivers: "This happened to me yesterday. I got a random email stating welcome to my free trial, but I never signed up. I called customer service and the burden was now on ME to cancel this trial before I got charged a full year. Walmart's customer support said that it was a technical issue[.] This is wrong that Walmart is doing this.").

by employees when they act as Walmart customers. As such, the Walmart+ membership reimbursements are for expenses normally incurred by the employees for their own benefit, not for Walmart's sole benefit or convenience.

80. Pursuant to Walmart's Regular Rate Policy, Walmart excluded these various categories of compensation from Flores's regular rate of pay, including during workweeks in which Flores worked over 40 total on-the-clock hours. Walmart likewise applied the W+ MBR NET deduction to Flores's wages during weeks in which she worked over 40 on-the-clock hours.

81. Throughout her employment, Walmart required Flores to report her hours to Walmart for approval through its uniform timekeeping system, in accordance with its policies and procedures.

82. Throughout her employment, Flores regularly worked 75 to 90 hours during her bi-weekly pay periods.

83. Flores also regularly worked over 8 hours in a day and/or 40 hours in a week.

84. For example, Flores worked over 50 total on-the-clock hours during the week of July 5 to July 11, 2025.

85. Flores also earned additional remuneration in the form of "SCHED CHANGE" pay and "W+ MBR GROSS" pay during the week of July 5 to July 11, 2025.

86. Walmart failed to include the "SCHED CHANGE" pay and the "W MBR GROSS" pay into Flores's regular rate during the week of July 5 and July 11, 2025. Walmart further applied the "W+ MBR NET" deduction to Flores's wages for the pay period covering July 5 to July 11, 2025, which further reduced her overtime wages.

87. Flores was also denied timely or compliant meal and rest periods each workday during this time period as a result of understaffing in the stocking department. Despite being denied compliant meal and rest periods each workday, Walmart failed to pay Flores any premium wages owed to her at the correct rate of pay during the pay period covering this workweek.

88. As another example, Flores worked over 50 on-the-clock hours during the week of April 19 to April 25, 2025.

89. Flores also earned additional remuneration in the form of "SCHED DECREASE"

and "W+ MBR GROSS" pay during the week of April 19 to April 25, 2025.

90. Walmart failed to include the "SCHED DECREASE" pay and "W+ MBR GROSS" pay into Flores's regular rate during the week of April 19 to April 25, 2025. Walmart further applied the "W+ MBR NET" deduction to Flores's wages for the pay period covering July 5 to July 11, 2025, which further reduced her overtime wages.

91. Flores was also denied timely or compliant meal and rest periods each workday during this time period as a result of understaffing in the stocking department. Despite being denied compliant meal and rest periods each workday, Walmart failed to pay Flores any premium wages owed to her at the correct rate of pay during this pay period.

92. Further, throughout her employment, Walmart failed to authorize, permit, and make available to Flores compliant meal and rest periods and failed to pay her the required premium pay for the first meal and rest period it denied or failed to make available each workday.

93. For instance, during Flores's time working in the Stocking 1 department of the Porter Ranch Super Center, she worked as the "second in command" to her supervisor Kamran. Part of her primary job duties included using her Walmart-issued work phone to take pictures of inventory items to verify other stocking associates did their jobs correctly and placed inventory in the right place.

94. During this time, Flores and Kamran were the only persons who could perform those job duties on any given shift. When Flores clocked out for her meal periods at Kamran's direction, there were no other employees available to perform the "second in command" job duties.

95. Because Flores would clock out for her 30-minute meal periods using her Walmart-issued phone, Kamran would frequently hand Flores his Walmart-issued phone and instruct her to complete checking the inventory and stocking progress of other associates during her 30-minute meal periods. In other words, Flores was required by Walmart to continue working during her unpaid 30-minute meal periods to complete her work assignments and Flores could not be relieved of her work duties to take a break due to understaffing.

96. Similarly, Flores was required to work through and skip her 10-minute rest periods on a consistent basis for the same reason: understaffing and inability to be relieved by other employees. The inventory/stocking department was chronically understaffed, which made it impractical and logistically impossible for Flores to take a 10-minute rest period each 4 hours of work during her shift.

97. Flores's supervisor, Kamran, would often work beside Flores while she worked through meal and rest periods and witnessed her being denied timely or compliant meal and rest periods.

98. This happened on numerous occasions, including but not limited to shifts within the pay periods of November 2, 2024 to November 15, 2024, November 16, 2024 to November 29, 2024, and January 25, 2025 to February 7, 2025. During these time periods, and others throughout her employment, Walmart failed to provide Flores with timely and compliant meal and rest periods each qualifying workday. Further, Walmart failed to pay Flores with premium pay penalties, at the correct rate of pay based on all remuneration, for each day in which Flores did not receive a timely or compliant meal period and rest period during these time periods. And when Walmart did provide Flores with such premium payments during these time periods, Walmart under-calculated Flores's regular rate of pay by failing to include all remuneration.

99. And, throughout her employment, Walmart failed to provide Flores with wage statements that accurately reflected all her hours worked, her proper overtime rate of pay, and all net and gross wages she actually earned at the required rates.

100. Walmart's provision of itemized wage statements which were non-compliant was willful and knowing, in that Walmart knew or reasonably should have known that all remuneration is presumed to be included into the regular rate (including the various pay codes described herein) but intentionally excluded those forms of remuneration from the regular rate of pay, resulting in underpayment of earned overtime wages and premium wages each pay period.

101. And while exact job duties and precise locations worked may differ, Flores and the other Hourly Employees are subject to Walmart's same or similar unlawful Regular Rate Policy.

102. Walmart runs its payroll for Flores and the other Hourly Employees using common

accounting and payroll software called "Workday HCM."

103. Walmart's common accounting and payroll software utilizes uniform calculations to calculate non-exempt employees' regular rates of pay and overtime rates of pay for its employees in California and elsewhere.

104. As a result of Walmart's common and uniform payroll systems and pay calculation formulas, Walmart subjects Flores and the other Hourly Employees to its Regular Rate Policy wherein Walmart intentionally excludes various forms of remuneration from the regular rate.

105. Despite knowing the other Hourly Employees regularly work more than 8 hours a workday and 40 hours a workweek, Walmart does not pay them for all overtime hours worked at the correct overtime rates of pay.

106. Instead, like Flores, Walmart fails to include various forms of remuneration into the Hourly Employees' regular rates of pay, including forms of remuneration bearing similar pay codes as those paid to Flores.

107. As a result of Walmart's failure to include all such remuneration into the regular rates of the other Hourly Employees, Walmart fails to pay them all overtime wages owed when they work over 40 hours in a week and earn such additional forms of remuneration.

108. Flores and the other Hourly Employees are therefore denied overtime pay, at the correct rate of pay, for all compensable overtime work performed during workdays in which they work over 8 hours and workweeks in which they work over 40 hours.

109. Further, like Flores, Walmart fails to provide the other Hourly Employees with *bona fide*, compliant meal and rest periods.

110. Instead, like Flores, Walmart requires the Hourly Employees to work continuously throughout their shifts, and they are never fully relieved of all their duties for 30-minute meal periods, even when they work more than 5 hours a day.

111. And they are not fully relieved of all their duties for 10-minute rest periods for every 4 hours they work or major fraction thereof.

112. Instead, Walmart requires Flores and the other Hourly Employees to work continuously throughout their shifts.

113. Like Flores, Walmart expects and requires the other Hourly Employees to be available to work during their entire shifts, even during any attempted meal or rest periods.

114. Walmart requires Flores and the other Hourly Employees to take meal periods after 5 hours as a result of understaffing and at Walmart's express direction.

115. But, like Flores, Walmart also fails to pay the other Hourly Employees 1 hour of premium pay for each day it denies them a compliant meal period.

116. And Walmart also fails to pay the Hourly Employees 1 hour of premium pay for each day it denies them a compliant rest period.

117. Finally, like Flores, Walmart fails to provide the other Hourly Employees with accurate itemized wage statements, as required by California law.

118. The wage statements Walmart provides are not accurate because they do not reflect the correct overtime rates of pay, the actual gross wages earned, overtime wages earned, premium pay earned, and/or actual gross and net wages earned.

119. Flores and the other Hourly Employees are owed unpaid wages, including overtime wages, as well as premium wages, when their employment terminates.

120. These wages remain unpaid under Walmart's policies and practices, and thus, Walmart fails to pay all wages due to the Hourly Employees upon termination of employment.

121. Thus, these wages remain due and owing to Flores and other Hourly Employees who are former Walmart Employees.

122. Walmart's violations of California law were willful, carried out in bad faith, and caused significant damage to Flores and the other Hourly Employees.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

123. Flores brings her claims as a class and collective action on behalf of herself and the other Hourly Employees pursuant to Federal Rule of Civil Procedure 23 and § 216(b) of the FLSA.

124. Like Flores, the other Hourly Employees are victimized by Walmart's Regular Rate Policy.

125. Other Hourly Employees worked with Flores and indicated they were paid in the same manner, received similar forms of compensation, performed similar work, and were subject

to Walmart's same illegal Regular Rate Policy.

126. Based on her experience with Walmart, Flores is aware Walmart's illegal Regular Rate Policy was imposed on other Hourly Employees.

127. The putative class of Hourly Employees is so numerous (in excess of 40 members) that joinder of all class members in one lawsuit is impracticable.

128. The Hourly Employees are known to Walmart and can be readily identified through Walmart's business and personnel records.

129. The Hourly Employees are similarly situated in the most relevant respects.

130. Even if their precise job titles, exact duties, and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay at the proper premium rates, compliant meal and rest periods and premium pay for missed meal and rest periods, accurate wage statements, and all wages earned upon termination of employment.

131. The *relevant* inquiry is whether the Hourly Employees were required to work under and were paid according to Walmart's Regular Rate Policy.

132. Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

133. Rather, the putative class of Hourly Employees is held together by Walmart's illegal Regular Rate Policy, which systematically deprived Flores and the other Hourly Employees of overtime wages at the correct premium rates, accurate wage statements, and all wages earned upon termination of employment.

134. Walmart's records show the number of hours the Hourly Employees worked "on the clock" each workday and workweek.

135. Walmart's records likewise show all forms of compensation paid to the Hourly Employees each workweek in which they worked over 8 hours in a workday and/or 40 hours in a workweek.

136. Walmart's records show whether or not it incorporates all forms of remuneration into the regular rate each workweek in which its employees worked on-the-clock overtime hours.

137. The back wages owed to Flores and the other Hourly Employees can therefore be

calculated using the same formula applied to the same records.

138. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Walmart's records, and there is no detraction from the common nucleus of liability facts.

139. Therefore, the issue of damages does not preclude class or collective treatment.

140. And Flores's experiences are therefore typical of the experiences of the other Hourly Employees.

141. Flores has no interest contrary to, or in conflict with, the interests of other Hourly Employees that would prevent class or collective treatment.

142. Like each Hourly Employee, Flores has an interest in obtaining the unpaid wages owed to them under California law.

143. Flores and her counsel will fairly and adequately represent the Hourly Employees and their interests.

144. Flores retained counsel with significant experience in handling complex class and collective action litigation.

145. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

146. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Walmart will reap the unjust benefits of violating California law.

147. Further, even if some of the Hourly Employees could afford individual litigation against Walmart, it would be unduly burdensome to the judicial system.

148. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Walmart.

149. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

150. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

151. The common questions of law and fact include:

a. Whether Walmart paid additional remuneration to the Hourly Employees on top of their base hourly rates of pay;

b. Whether Walmart failed to include all remuneration into the Hourly Employees' regular rates of pay;

c. Whether Walmart's failure to include all remuneration into the regular rate resulted in under-calculation of the overtime rate of pay for Hourly Employees;

d. Whether Walmart failed to pay the Hourly Employees overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 8 in a workday and 40 in a workweek;

e. Whether Walmart failed authorize, permit, and make available 30-minute meal periods for every 5 hours worked and/or 10-minute rest periods for every four hours worked or major fraction thereof;

f. Whether Walmart's decision not to pay the Hourly Employees wages, including overtime, double time, and premium wages for all hours worked was made in good faith;

g. Whether Walmart provided itemized wage statements to the Hourly Employees which did not include accurate overtime rates of pay, premium pay and overtime pay earned, gross wages earned, and/or net wages earned;

h. Whether Walmart failed to pay all wages owed to the Hourly Employees upon their separation of employment; and

i. Whether Walmart's violations were willful.

152. As part of its regular business practices, Walmart intentionally, willfully, and repeatedly violated the FLSA, Labor Code and applicable Wage Orders.

153. Walmart's illegal policies deprived Flores and the other Hourly Employees of the earned wages, including overtime and premium wages, they are owed under the Labor Code and applicable Wage Orders.

## WALMART'S VIOLATIONS WERE WILLFUL

154. Walmart knew it was subject to the overtime provisions of the FLSA, California Labor Code, and applicable IWC Wage Orders.

155. Walmart knew the California Labor Code and applicable IWC Wage Order(s) required it to pay non-exempt employees, including Flores and the other Hourly Employees, earned wages for all hours worked.

156. Walmart knew the FLSA, California Labor Code, and applicable IWC Wage Order(s) required it to pay non-exempt employees, including Flores and the other Hourly Employees overtime wages at rates not less than 1.5 times their regular rates of pay, based on all remuneration, for all hours worked after 8 in a workday and 40 in a workweek.

157. Walmart knew each Hourly Employees worked more than 8 hours in a workday or 40 hours in at least one workweek during the 4 years before this Complaint was filed because it required them to report their "on the clock" hours worked.

158. Walmart knew Flores and the other Hourly Employees worked more than 8 hours in at least one workday and/or more than 40 hours in at least one workweek during the 4 years before this Complaint was filed because it required them to report their "on the clock" hours worked.

159. Walmart knew Flores and the other Hourly Employees are non-exempt employees entitled to overtime wages under the FLSA and Labor Code.

160. Walmart knew it paid the Hourly Employees on an hourly basis.

161. Walmart knew it paid the Hourly Employees additional remuneration beyond their base hourly rates of pay.

162. Walmart knew that all remuneration is presumed to be included into the regular rate under the FLSA and Labor Code.

163. Walmart knew it improperly excluded various forms of compensation from the Hourly Employees' regular rates of pay, and did so during workweeks in which the Hourly Employees worked over 8 hours in a day and/or 40 hours in a workweek.

164. Walmart's failure to pay Flores and the other Hourly Employees overtime wages as

a result of its failure to include all remuneration into the regular rate was neither reasonable nor was its decision to exclude remuneration from the regular rate made in good faith.

165. Thus, Walmart knew, should have known, or recklessly disregarded whether it failed to pay Flores and the other Hourly Employees all overtime wages owed.

166. Walmart knew the Labor Code and applicable IWC Wage Orders required it to provide employees, including Flores and the other Hourly Employees, with a 30-minute, duty free meal period for every five hours worked and a 10-minute, duty free rest period for every four hours worked or major fraction thereof.

167. Walmart knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including Flores and the other Hourly Employees, one hour of premium pay for each day they are denied a compliant meal period.

168. And Walmart knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including Flores and the other Hourly Employees, one hour of premium pay for each day they are denied a compliant rest period.

169. Walmart knew Flores and the other Hourly Employees did not receive compliant meal or rest periods each workday.

170. Nonetheless, Walmart did not pay Flores and the other Hourly Employees one hour of premium pay each day it denied them a compliant meal period.

171. And Walmart did not pay Flores and the other Hourly Employees one hour of premium pay each day it denied them a compliant rest period.

172. Walmart's failure to provide Flores and the other Hourly Employees with compliant meal periods was neither reasonable nor was its decision not to pay these employees one hour of premium pay each day it denied them a compliant meal period made in good faith.

173. Thus, Walmart knew, should have known, or recklessly disregarded whether it failed to pay Flores and the other Hourly Employees for all the hours they performed compensable work.

174. Walmart knew the California Labor Code and applicable IWC Wage Orders required it to provide Flores and the other Hourly Employees with accurate itemized wage

statements.

175. Nonetheless, Walmart knew the wage statements it provided to Flores and the other Hourly Employees did not accurately reflect their actual overtime rates of pay, their actual overtime wages earned, their actual gross and net wages earned, and/or their premium pay for missed meal and rest periods.

176. Indeed, Walmart made the intentional decision to include these various forms of remuneration as pay codes on its itemized wage statements, but nonetheless intentionally decided to exclude them from the regular rate of pay each pay period. As a result, Walmart intentionally, willfully, and knowingly provided itemized wage statements which under-reported the actual and appropriate overtime rates of pay and premium wages owed to Flores and the Hourly Employees each pay period.

177. Walmart likewise made the intentional decision not to pay Flores and the other Hourly Employees all premium wages owed for each workday in which they were denied timely or compliant meal and rest periods. As a result Walmart issued itemized wage statements which intentionally omitted the premium wages owed to Flores and the other Hourly Employees each pay period.

178. Walmart also knowingly and intentionally omitted the W+ MBR NET deduction from the wage statements provided to Flores and the other Hourly Employees each pay period. Instead, Walmart issued wage statements listing the "W+ MBR NET" deduction as $0 for the pay period, while the "Year to Date" deduction increased by $3.76 each pay period. This was an intentional violation of California Labor Code § 226(a)(4).

179. Walmart's failure to provide Flores and the other Hourly Employees with accurate wage statements was neither reasonable nor was its decision not to provide these employees with accurate wage statements made in good faith.

180. Walmart knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA, Labor Code, and applicable IWC Wage Order(s).

181. Walmart knowingly, willfully, and/or in reckless disregard carried out its illegal policies that systematically deprived Flores and the other Hourly Employees of their earned

overtime wages in violation of the FLSA and California law.

182. Walmart knowingly, willfully, and/or in reckless disregard carried out its illegal policies that systematically deprived Flores and the other Hourly Employees of their earned wages, overtime wages, rest and meal periods, premium pay for missed rest and meal periods, and accurate wage statements in violation of the Labor Code and applicable IWC Wage Order(s).

183. In sum, Walmart's violations were willful, carried out in bad faith, and caused significant damage to Flores and the other Hourly Employees.

## COUNT I

### Failure to Pay Overtime Wages Under the FLSA Pursuant to 29 U.S.C § 216

184. Flores brings her FLSA claims on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

185. Walmart violated, and is violating, the FLSA by employing non-exempt employees (Flores and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 each workweek, including hours worked "off the clock."

186. Walmart's unlawful conduct harmed Flores and the other FLSA Collective Members by depriving them of the overtime compensation they are owed.

187. Accordingly, Walmart owes Flores and the other FLSA Collective Members the difference between the overtime wages actually paid and the proper overtime wages actually earned.

188. Because Walmart's FLSA violations were willful, Walmart owes these wages for at least the past 3 years.

189. Because Walmart's FLSA violations were not committed in good faith, Walmart is also liable to Flores and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

190. Finally, Flores and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

**Failure to Pay Overtime Wages Pursuant to Lab. Code § 510**

191. Flores brings her overtime claims under the Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

192. At all relevant times, Walmart was subject to the Labor Code and applicable Wage Order(s) because Walmart was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

193. At all relevant times, Walmart employed Flores and the California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

194. Flores and the California Class Members are entitled to overtime pay, based on all remuneration, under the Labor Code and applicable Wage Orders.

195. Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

196. IWC Wage Order 17-2001(4) states that employees:

> … shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

197. Labor Code § 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to

> recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

198. Labor Code § 1198 makes it unlawful for employers, like Walmart, to employ employees, including Flores and the California Class Members, under conditions that violate the IWC Wage Order(s).

199. Despite regularly working over 8 hours a workday and 40 hours a workweek as part of their normal and regular schedules, Walmart did not pay Flores and the California Class Members overtime wages of 1.5 times their regular rates of pay—based on all remuneration—for all overtime hours worked, including those worked "off the clock."

200. Walmart's unlawful conduct harmed Flores and the California Class Members by depriving them of the overtime wages they are owed under California law.

201. Accordingly, Walmart owes Flores and the California Class Members the unpaid balance of the full amount of overtime wages owed and interest at the highest applicable rates.

202. Finally, Walmart is also liable to Flores and the California Class Members for their reasonable attorneys' fees and costs incurred in this action.

## COUNT III

**Failure to Authorize, Permit, and/or Make Available Meal and Rest Periods**

**Pursuant to Lab. Code §§ 226.7 and 512**

203. Flores brings her meal and rest period claims under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

204. At all relevant times, Walmart was subject to the Labor Code and applicable Wage Orders.

205. At all relevant times, Walmart was Flores's and the California Class Members' "employer" within the meaning prescribed in the Labor Code.

206. At all relevant times, Flores and each California Class Member was Walmart's "employee" within the meaning prescribed in the Labor Code.

207. At all relevant times, Flores and the California Class Members were entitled to

compliant, *bona fide* meal and rest periods under the California Labor Code and applicable IWC Wage Order(s).

208. Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Walmart, to authorize and permit meal and rest periods to their employees, including Flores and the California Class Members.

209. Specifically, Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Walmart, to provide employees, including Flores and the California Class Members, one uninterrupted 30-minute meal period when they work more than 5 hours per day and a second uninterrupted 30-minute meal period when they work more than 10 hours in day.

210. Similarly, Section 226.7 of the California Labor Code and the applicable Wage Orders require employers, like Walmart, to authorize and permit employees, including Flores and the California Class Members, to take 10 minutes of rest time per 4 hours (or major fraction thereof) of work, and to pay employees their full wages during those rest periods.

211. Unless employees are relieved of all duties during their 30-minute meal period(s) and 10-minute rest period(s), the employees are considered "on duty," and the meal/rest period must be counted as time worked under the applicable IWC Wage Order(s).

212. Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Order(s), employers, like Walmart, who fail to provide an employee with a required meal and/or rest period must, as compensation, pay the employee one hour of pay at the employee's regular rate for each day that the meal and/or rest period was not authorized or permitted.

213. At all relevant times, Walmart routinely failed to make meal periods available to Flores and the California Class Members.

214. Despite long days regularly lasting in excess of 8, and occasionally 12 hours, Flores and the California Class Members are regularly unable to take a meal period, prevented from timely taking a meal period, are otherwise subject to interruption during their meal periods, and are frequently interrupted during their attempted meal periods.

215. Flores and the California Class Members are not paid one hour of premium pay for

all of their missed meal periods as required by California law. When Walmart does pay premium wages to Flores and the California Class Members for non-compliant meal periods, Walmart intentionally under-calculates the correct regular rate of pay by failing to include numerous categories of remuneration paid to these employees.

216. Similar to meal periods, at all relevant times, Walmart regularly fails to make rest periods available to Flores and the California Class Members.

217. When available, if ever, Flores's and the California Class Members' rest periods were often not compliant, but rather, were generally untimely and/or short.

218. Flores and the California Class Members do not receive premium pay for their missed rest periods as required by California law. When Walmart does pay premium wages to Flores and the California Class Members for non-compliant rest periods, Walmart intentionally under-calculates the correct regular rate of pay by failing to include numerous categories of remuneration paid to these employees.

219. Walmart's unlawful conduct harmed Flores and the California Class Members by depriving them of compliant meal and rest periods, as well as premium pay.

220. Walmart knowingly, willfully, or in reckless disregard carried out this pattern or practice of failing to provide Flores and the California Class Members compliant meal and rest periods and required premium pay, at the correct regular rate of pay, for missed meal and rest periods.

221. Accordingly, Flores and the California Class Members are entitled to compensation for Walmart's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

## COUNT IV

### Failure to Provide Accurate Itemized Wage Statements Pursuant to Lab. Code § 226

222. Flores brings her wage statement claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

223. At all relevant times, Walmart was subject to the Labor Code and applicable Wage

Order(s) because Walmart was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

224. At all relevant times, Walmart employed Flores and the California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

225. Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to her or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of her or her social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

226. The applicable Wage Order(s) establish similar wage statement requirements.

227. Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

228. As a result of its aforementioned illegal practices, Walmart does not provide timely, accurate itemized wage statements to Flores and the California Class Members, in violation of Labor Code § 226(a) and the applicable Wage Order(s).

229. Specifically, the wage statements Walmart provides Flores and the California Class

Members do not accurately reflect their actual overtime rates of pay, their actual gross wages earned, their actual overtime wages earned, their premium pay earned, or their actual gross or net wages earned.

230. The wage statements Walmart provides Flores and the California Class members also fails to accurately describe all deductions made each pay period. Instead, Walmart issues wage statements which omit the deduction amount for the "W+ MBR NET" deduction each pay period, listing the deduction as "$0" and instead only informs the employees of the aggregated "Year to Date" total of such deduction, which increases each pay period. This demonstrates Walmart applies the W+ MBR NET deduction, but intentionally omits the amount being deducted from wages during the specific pay period.

231. Walmart willfully and intentionally provided these non-compliant wage statements to Flores and the California Class Members despite the ready ability to provide accurate wage statements.

232. Walmart's unlawful conduct harmed Flores and the California Class Members by depriving them of the accurate wage statements they are entitled to under California law.

233. Flores and the California Class Members were injured due to Walmart's wage statement violations.

234. Upon information and belief, because Walmart failed to provide accurate and compliant wage statements, Flores and the California Class Members suffered informational harm and were prevented from knowing whether, and to what extent, they had been underpaid by Walmart.

235. As a result of Walmart's wage statement violations, Flores and the California Class Members were deprived of the ability to ensure Walmart was making proper payroll tax deductions on their behalf each pay period.

236. Walmart's wage statement violations caused Flores and the California Class Members to endure uncertainty regarding their wages and prevented them from taking action to correct Walmart's wage-and-hour violations at an earlier time, resulting in numerous workweeks for which some of the California Class Members are now time-barred from being able to recover

in a private cause of action.

237. Accordingly, Walmart is liable to Flores and the California Class Members for the amounts described above, plus interest.

238. Finally, Walmart is also liable to Flores and the California Class Members for their reasonable attorneys' fees and costs incurred in this action pursuant to Labor Code § 226(e).

## COUNT V

### Waiting Time Penalties Pursuant to Lab. Code §§ 201–203

239. Flores brings her waiting time penalties claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

240. At all relevant times, Walmart was subject to the Labor Code and applicable Wage Order(s) because Walmart was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

241. At all relevant times, Walmart employed Flores and the California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

242. Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

243. Labor Code § 202 provides: "If an employee not having a written contract for a definite period quits her or her employment, her or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of her or her intention to quit, in which case the employee is entitled to her or her wages at the time of quitting."

244. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

245. Flores and some of the other California Class Members have left their employment with Walmart, at which time Walmart owed them unpaid wages.

246. These earned, but unpaid, wages derive from the unpaid earned wages, overtime pay, and premium pay Walmart owes Flores and the California Class Members.

247. Walmart willfully refused and continues to refuse to pay Flores and the California Class Members all wages due and owing to them, in the form of earned wages, overtime pay, and premium pay, upon the end of their employment as a result of Walmart's illegal policies.

248. Walmart's unlawful conduct harmed Flores and the California Class Members by depriving them of the earnings and interest they are owed under California law.

249. Accordingly, Walmart is liable to Flores and the California Class Members for all penalties owing pursuant to Labor Code §§ 201–203.

250. Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due.

251. Therefore, Flores and other California Class Members are entitled to penalties pursuant to Labor Code § 203, plus interest.

## JURY DEMAND

252. Flores hereby demands a jury trial on all claims and issues, as she and the other Hourly Employees are entitled to a jury.

## RELIEF SOUGHT

WHEREFORE, Flores, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to Fed. R. Civ. P. 23;

c. An Order appointing Flores and her counsel to represent the interests of the Hourly Employees;

d. Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the Labor Code;

e. A Declaratory Judgment that Walmart violated the FLSA, Labor Code, California law, and public policy as alleged herein;

f. An Order finding Walmart liable to Flores and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

g. An Order finding Walmart liable to Flores and the other Hourly Employees for their unpaid overtime wages, unpaid premium wages, statutory damages, and any other penalties owed under the Labor Code and applicable IWC Wage Order(s);

h. An equitable accounting to identify, locate, and restore all current and former employees the wages and compensatory damages they are due, with interest thereon at the highest rates allowable by law;

i. Judgment awarding Flores and the other Hourly Employees all unpaid wages, overtime wages, premium wages, statutory damages, and any other penalties available under the Labor Code and applicable IWC Wage Order(s);

j. An Order awarding attorney's fees, costs, and expenses as provided by the FLSA, Labor Code, Code of Civil Procedure § 1021.5, the laws of the State of California, and/or other applicable law;

k. Pre- and post-judgment interest at the highest applicable rates; and

l. Such other and further relief as may be necessary and appropriate.

Date: January 8, 2026

Respectfully submitted,

*/s/ William M. Hogg*

Joshua I. White
William M. Hogg
**LAUREL EMPLOYMENT LAW**

*Counsel for Flores & the Hourly Employees*

## Certificate of Service

I hereby certify that I electronically filed the foregoing document(s) with the Clerk of Court for the United States District Court, Central District of California, by using the Court's CM/ECF system on January 8, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

*/s/ William M. Hogg*
William M. Hogg